**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **WITHCO, LLC and WILLIAM THOMAS HARRINGTON,** | ) ) ) | |
| **Plaintiffs,** | ) ) | **Case No. 3:09-01207** |
| | ) | **Judge Nixon** |
| **v.** | ) | **Magistrate Judge Knowles** |
| | ) | |
| **REPUBLIC SERVICES OF TENNESSEE, LLC, and REPUBLIC SERVICES, INC.,** | ) ) ) | **JURY DEMAND** |
| **Defendants.** | ) ) | |

## <u>ORDER</u>

Pending before the Court is Defendants Republic Services of Tennessee, LLC ("RST")

and Republic Services, Inc.'s ("RSI") (collectively, "Defendants") Motion for Summary

Judgment (Doc. No. 38) ("Defendants' Motion"), filed with a supporting Memorandum (Doc.

No. 39) and Statement of Facts (Doc. No. 40).  Plaintiffs Withco, LLC ("Withco") and William

Thomas Harrington ("Mr. Harrington") (collectively, "Plaintiffs") have filed a Declaration of

William Thomas Harrington (Doc. No. 44), a Response in Opposition (Doc. No. 45) and a Rule

56 Statement of Material Facts Not in Dispute (Doc. No. 46).[1]  Defendants subsequently filed a

Motion for Leave to File Reply (Doc. No. 48) which is hereby **GRANTED**, and a Reply (Doc.

No. 49).  Defendants also filed a Response to Plaintiffs' Rule 56 Statement of Material Facts Not

in Dispute.  (Doc. No. 50.)

For the reasons stated herein, the Court hereby **GRANTS** Defendants' Motion for

Summary Judgment.

I.    **BACKGROUND**

   A.    *Procedural History*

On December 23, 2009, Plaintiffs filed this action against Defendants for breach of contract and unjust enrichment.  (Doc. No. 1.)  On March 24, 2010, Plaintiffs filed an Amended Complaint against Defendants, claiming (1) breach of contract; (2) unjust enrichment; (3) quantum meruit; (4) violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-104 *et seq.*; (5) violation of the Tennessee Trade Practices Act, Tenn. Code Ann. § 47-25-101 *et seq.*; (6) unfair competition; and (7)  violation of the Tennessee Uniform Trade Secrets Act, Tenn. Code Ann. § 47-18-104 *et seq.*  (Doc. No. 11.)  In response, Defendants filed a Motion to Dismiss for Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 13.)

On January 12, 2011, Plaintiffs moved to file a Second Amended Complaint (Doc. No. 34), and Defendants filed a Response in Opposition (Doc. No. 35).  Magistrate Judge Knowles denied this motion on February 4, 2011.  (Doc. No. 42.)

Defendants filed a Motion for Summary Judgment on January 31, 2011 (Doc. No. 38), with a Memorandum in Support (Doc. No. 39) and a Statement of Facts (Doc. No. 40).  Plaintiffs filed a Response in Opposition to Defendants' Motion (Doc. No. 45) and a Rule 56 Statement of Material Facts Not in Dispute (Doc. No. 46) on February 25, 2011.  Defendants filed a Motion for Leave to File a Reply (Doc. No. 48) along with a Reply (Doc. No. 50) on March 3, 2011.  A hearing was held on Defendants' Motion on March 7, 2011.

---

[1] Plaintiffs appear to have filed this Statement twice.  (Doc. Nos. 46 & 47.)

The Court ruled on Defendants' Motion to Dismiss on March 23, 2011, granting that Motion in part and dismissing all of Plaintiffs' claims except the breach of contract claim against RST and the unjust enrichment claim against RSI. (Doc. No. 52.)

B.    *Factual History*[2]

RSI is a Delaware corporation engaged in the business of collection, transfer, and disposal of solid waste. RST, a Delaware limited-liability company, is RSI's wholly-owned subsidiary. Mr. Harrington is the president and sole owner of Withco, a Tennessee limited-liability company, and has expertise in the development of solid waste transfer stations.

On July 11, 2002, RST, Withco, and Mr. Harrington entered into an agreement ("Agreement") (Doc. No. 1-1) to pursue the development of a solid waste transfer station for use by RST in Davidson County, Tennessee. RSI is not a party to the Agreement. Under the Agreement, Withco was responsible for locating and obtaining an option to purchase a property for the proposed transfer station as well as obtaining in the name of RST or its designees any and all permits necessary to construct the transfer station. The Agreement provides that the location of the property must be "acceptable to RST" and that Withco was required to perform preliminary due diligence on the property in an attempt to determine whether the property was in compliance with environmental laws and zoning requirements.

The Agreement also provides that Withco was required to assign any option to RST "within ten (10) days of any written request from [RST] to do so" and "[t]he decision as to if and

---

[2] Plaintiffs did not respond directly to Defendants' Statement of Material Undisputed Facts (Doc. No. 40). Per Local Rule 56.01(g), Plaintiffs have indicated that the facts contained in Defendants' Statement are not disputed for the purposes of summary judgment. Unless otherwise noted, all facts in this section are undisputed and are taken from Defendants' Statement of Material Undisputed Facts (Doc. No. 40) or Defendants' Reply to Plaintiff's Rule 56 Statement of Material Facts Not in Dispute (Doc. No. 50).

when the option is assigned to RST shall be within the sole discretion of [RST]." Mr. Harrington confirmed in his deposition that "whenever [RST] wanted the option to purchase assigned to them, all they had to do was direct it to be done and it was supposed to be done."

The Agreement provides for compensation to Withco in the form of a Success Fee, stating:

> 7.01 <u>Success Fee</u>. Republic shall pay Withco the sum of two hundred and fifty thousand dollars ($250,000) no later than sixty (60) days after all of the following have occurred:
>
> (a) Fee simple title to the Transfer Station Property is vested in [RST], or its designees, free and clear of any liens, claims or encumbrances;
>
> (b) All permits required to allow construction of the Transfer Station on the Transfer Station Property have been issued, or transferred pursuant to Section 6.04, to [RST] or its designees; and
>
> (c) [RST] has determined that there are no appeals, reconsiderations, claims, actions, omissions, hearings or proceedings, either administrative or judicial, pending or threatened (i) against [RST], Withco or Harrington, with respect to the Project, (ii) by or before any governmental agency with respect to the Project, or (iii) affecting [RST's] right to construct, own and operate the Transfer Station.

Section 7.02 requires RST to reimburse Withco the amount of any payments made to secure an option at the time the Success Fee is paid pursuant to Section 7.01, and Section 7.03 provides that RST will pay Withco Tonnage Royalties of up to $300,000 based upon actual waste received at the transfer station. The first Tonnage Royalty does not become due until the thirtieth day following the "Commencement Date," defined as "the date on which [RST], or its designee, begins commercial operation of the Transfer Station or the Transfer Station Property by accepting and receiving payment for waste." Section 7 of the Agreement states that the Success Fee, reimbursement of any option payments, and the Tonnage Royalty are the "sole

compensation to Withco under this Agreement."

The Agreement also contains an exclusivity clause, precluding the parties from

"pursu[ing] the development of a transfer station in Davidson County, Tennessee, until after the

Commencement Date," and a merger clause providing:

> This Agreement sets forth the entire agreement and understanding of the
> parties hereto with respect to the subject matter of this Agreement and
> supersedes all arrangements, communications, representations or warranties,
> whether oral or written, by any officer, employee or representative of either
> party hereto.

The Agreement also provides the following definitions:

> "Transfer Station": A solid waste transfer station, the design and specifications
> of which are acceptable to [RST], for which all requisite Permits have been
> obtained, to be constructed on the Transfer Station Property pursuant to the
> terms and conditions of this Agreement and in compliance with all Applicable
> Laws.

> "Transfer Station Property": Real property which is (i) located within the area
> described on Schedule 2; (ii) in compliance and conformity with
> Environmental Laws; and (iii) acceptable to [RST] as a site for the Transfer
> Station.

After executing the Agreement, Withco located certain property owned by Altivia

Corporation (the "Altivia Property"), which it believed was suitable for the Transfer Station

Property. Plaintiffs obtained an option to purchase the Altivia Property (the "Altivia Option") by

paying Altivia Corporation certain nonrefundable payments to secure the option. Withco

subsequently assigned the Altivia Option to RST, and RST reimbursed the $19,000 Plaintiffs had

expended in connection with obtaining the Altivia Option.

RST subsequently caused several environmental studies to be performed on the Altivia

Property. The results of those studies revealed significant potential costs and risks related to

environmental issues.  RST therefore concluded that the Altivia Property would not be suitable for the transfer station, and sent Altivia Corporation a letter terminating the Altivia Option.  RST considered using other properties for the transfer station, including a property near the Altivia Property, owned by an entity called Lone Star (the "Lone Star Property").  However, RST did not purchase the Lone Star Property and has not pursued any other property for use in connection with developing a transfer station.

In December of 2008, RSI merged with Allied Waste Industries, Inc. ("Allied"), obtaining 100 percent of Allied's stock.  Allied wholly owns Allied Waste North American, Inc., which wholly owns BFI Waste Services, LLC ("BFI").  BFI owns and operates a solid waste transfer station in Davidson County.  BFI operated the transfer station prior to the merger and continues to operate it today.

Mr. Harrington admitted in his deposition that Plaintiffs have not presented RST with any potential properties or made any effort to develop a transfer station for RST after the Altivia Property.  Mr. Harrington also admitted that there was no initiation of commercial operation on any property that he worked on for RST.  Mr. Harrington further confirmed that at least the first two of the requisite conditions had not been met with regard to the Success Fee, and that a Commencement Date (triggering the payment of the Tonnage Royalties) had not occurred for any transfer station that he worked on under the Agreement.  To date, neither party has terminated the Agreement.

## II.    STANDARD OF REVIEW

Summary judgment is rendered when "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The

moving party must demonstrate that the non-moving party has failed to establish a necessary element of that party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment will be granted if "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, 93 F.3d 230, 233 (6th Cir. 1996). The movant has the initial burden of informing the district court of the basis of the summary judgment motion and identifying portions of the record which lack a genuine issue of material fact to support the non-movant's case. *See Celotex*, 477 U.S. at 323.

The non-moving party may not rest solely on the allegations in the complaint, but must delineate specific evidence that shows there is a genuine issue for trial. *See id.* at 324. A "mere possibility" of a factual dispute is not sufficient to withstand a properly supported motion for summary judgment. *Baird v. NHP Mill Creek Apartments*, 94 F. App'x 328, 330-31 (6th Cir. 2004) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). A dispute about a material fact is genuine if a reasonable factfinder could find for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A party asserting or denying that a fact is genuinely disputed may support its position by (1) citing to particular parts of materials in the record, (2) showing that the materials cited by the opposing party do not establish the absence or presence of a genuine dispute, or (3) showing that an adverse party cannot produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1).

All reasonable inferences are to be drawn in favor of the non-moving party and the evidence of the non-movant is to be believed. *Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . on a motion for summary judgment." *Id.* If the

court determines that a reasonable factfinder could not find for the non-moving party, summary judgment must be granted. *See Lexington-South Elkhorn Water Dist.*, 93 F.3d at 233.

## III.    DISCUSSION

### A.    *Breach of Contract Against RST*

To succeed on a claim for breach of contract under Tennessee common law, a plaintiff must prove three elements: (1) the existence of a contract, (2) breach of the contract, and (3) damages resulting from the breach. *Life Ctrs. of Am., Inc. v. Charles Town Assoc. L.P.*, 79 F.3d 496, 514 (6th Cir. 1996). The parties do not dispute that a contract existed between Withco, Mr. Harrington, and RST, in the form of the Agreement. Plaintiffs' Amended Complaint alleges that RST breached the Agreement by (1) failing to compensate Plaintiffs; (2) withholding reimbursement of the payments that Plaintiffs paid to secure the Altivia Option until Plaintiffs assigned the Option; (3) pursuing another transfer station in violation of the exclusivity clause; and (4) failing to honor its commitment to pursue development of a transfer station with Plaintiffs. (Doc. No. 11 ¶¶ 35-37.) Plaintiffs' Response to Defendants' Motion also claims that RST breached the Agreement by failing to advise Withco in writing that the Altivia Option was not acceptable and why, and that RST repudiated the Agreement. (Doc. No. 45 at 6-7.) The Court will address each of these alleged breaches in turn.

### 1.    Compensation

Defendants contend that RST was not required to pay Plaintiffs a Success Fee or Tonnage Royalties, the only compensation contemplated by the Agreement, because the requisite conditions under Section 7.01 were not met for either form of compensation. (Doc. No. 39 at 12.) Plaintiffs have not disputed that the Agreement does not provide for any other

8

compensation, and the Court agrees that RST has not breached the Agreement by failing to pay either the Success Fee or Tonnage Royalties.

Section 7.01 of the Agreement clearly delineates three requirements that must be met before RST must pay the Success Fee. Plaintiffs have offered no evidence that any of those conditions were met, much less all three. In fact, Mr. Harrington admitted in his deposition that two of the required events have not occurred. Section 7.02 of the Agreement also states that any Tonnage Royalties do not become due until after the Commencement Date, the date on which commercial operations of the Transfer Station begins, and there is no dispute that a Transfer Station was never constructed. Withco is therefore not entitled to the Success Fee or the Tonnage Royalties under the plain terms of the Agreement. Further, there are no provisions in the Agreement for any separate and direct compensation to Mr. Harrington.

Plaintiffs argue, however, that Section 7.01 is conditional only as to the time of payment of the Success Fee and not as to whether it has been earned. (Doc. No. 45 at 4.) Plaintiffs assert that this is a contractual defect which "in theory" allows RST to delay payment to Withco indefinitely. (*Id.*) Plaintiffs suggest that the Court should construe the provision fairly and reasonably to find that Withco has earned the Success Fee by meeting all of its obligations under the Agreement. (*Id.* at 5.)

Plaintiffs' position conflicts with Tennessee law on contractual interpretation. If the language of the contract is clear and unambiguous, a court should follow its plain meaning. *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 704 (Tenn. 2008). A court's goal in interpreting contracts is to ascertain the intention of the parties and to give effect to that intention. *Id.* at 703-04 (citing *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521

9

S.W.3d 578, 580 (Tenn. 1975)). Courts should avoid rewriting agreements under the guise of interpreting them. *Pylant v. Spivey*, 174 S.W.3d 143, 151 (Tenn. Ct. App. 2003). "The interpretation should be one that gives reasonable meaning to all of the provisions of the agreement, without rendering portions of it neutralized or without effect." *Maggart*, 259 S.W.3d at 704. Where parties have unambiguously set out the terms of their agreement, a court should enforce those terms, "regardless of any inequity arising from that enforcement." *Pylant*, 174 S.W.3d at 152.

If the Court were to accept Plaintiffs' assertion that the three conditions related to the Success Fee are only relevant to the timing of payment, and not to whether the compensation was earned, there would remain no explanation in the terms of the Agreement as to when the Success Fee is in fact earned. The portion of Section 7.01 stating, "Republic shall pay Withco the sum of two hundred and fifty thousand dollars ($250,000)" would stand alone, without condition, essentially creating an immediate obligation on the part of RST to pay $250,000 without any obligation on the part of Withco. The Court does not accept that this was the intention of the parties in executing the Agreement and declines to rewrite the terms of the Agreement to such effect. Further, Plaintiffs have cited no law in support of their "contractual defect" theory. The Court finds no evidence of unequal bargaining power between the parties or any other reason to construe the Agreement other than according to its plain meaning, nor have Plaintiffs argued that the Agreement's language related to compensation is ambiguous. Accordingly, the Court finds that RST is entitled to summary judgment on Plaintiffs' compensation theory of their breach of contract claim.

2.      Assignment of the Altivia Option

Similarly, Defendants argue that RST did not breach the Agreement by requiring Plaintiffs to assign it the Altivia Option before reimbursing Withco for the payments it made to secure the option.  (Doc. No. 39 at 12-13.)  Plaintiffs appear to have abandoned this theory of RST's breach of the Agreement in their Response to Defendants' Motion.  The Court finds, nevertheless, that the theory fails as a matter of law.  Under the Agreement, and as Mr. Harrington admitted in his deposition, the assignment of procured options is entirely within RST's discretion under the Agreement and there are no conditions on which RST's right to assignment is contingent, such as reimbursement of the option payments.  RST could not, therefore, have breached the clear terms of the Agreement by requiring Plaintiffs to assign the Altivia Option to it before reimbursement.[3]  Plaintiffs have failed to create a genuine dispute of material fact as to this theory of their breach of contract claim, and RST is therefore entitled to summary judgment on it.

3.      Exclusivity Clause

Defendants also argue that RST did not breach the Agreement's exclusivity clause because it never pursued the development of a transfer station in Davidson County, as prohibited by the Agreement.  (Doc. No. 39 at 11.)  Plaintiffs' Amended Complaint alleges, however, that RST is in breach of the exclusivity clause because of RSI's merger with Allied in 2008.  (Doc. No. 11 ¶ 36.)  Specifically, Plaintiffs contend that the merger resulted in RST obtaining the use and benefit of BFI's transfer station, which constitutes pursuit of developing a transfer station.

---

[3] The Court notes that the Agreement does require reimbursement upon payment of the Success Fee, upon RST's termination of the Agreement, or if RST decides not to purchase a property after Withco has secured an option on that property.  However, it is undisputed that RST reimbursed Withco for the Altivia Option, and Plaintiffs

(Doc. No. 45 at 7-8.)  Plaintiffs again provide no supporting law for their argument.

Defendants respond that the merger did not result in RST acquiring BFI's transfer station because RST is only a subsidiary of RSI, the merging company.  (Doc. No. 39 at 14-15.)  Plaintiffs assert that the distinction between RST and RSI is a "sham," and therefore any legal effect of the merger applies to RST as well.  (Doc. No. 45 at 7.)  Even if this were the case, however, Plaintiffs have not created a genuine dispute as to whether the merger would result in RST's ownership of the BFI transfer station.  Plaintiffs have not disputed that BFI was a second-tier subsidiary of Allied, and is therefore now a third-tier subsidiary of RSI by virtue of RSI purchasing 100 percent of Allied's stock.  As the United States Supreme Court has noted, it is a "basic tenet of American corporate law" that "[a] corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary; and, it follows with even greater force, the parent does not own or have legal title to the subsidiaries of the subsidiary."  *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003).  Thus, RSI did not acquire ownership of BFI's transfer station merely by purchasing Allied's stock, and therefore neither did RST, even if RSI and RST were in fact the same company.  RSI might have obtained some direct or indirect control over the transfer station, or "use and benefit" of the station as Plaintiffs suggest, but Plaintiffs have not provided any facts to create a genuine dispute that either of these situations exist.

Additionally, the Court rejects Plaintiffs' theory that the acquisition of Allied's stock constituted "pursuing the development" of BFI's transfer station.  Plaintiffs do not dispute that the BFI transfer station existed and was operational long before RSI's merger with Allied.  There

---

have not alleged breach of the other provisions related to reimbursement.

is no evidence that the merger was effectuated for the purpose of "pursuing" BFI's transfer

station, and the Court finds it extremely unlikely that, even if the merger did result in RSI or RST

owning the station, the consequential acquisition of a third-tier subsidiary's existing transfer

station would constitute "development." When interpreting contracts, the contractual language

should be "taken in its 'plain, ordinary, and popular sense.'" *Maggart*, 259 S.W.3d at 704

(quoting *Bob Pearsall Motors, Inc.*, 521 S.W.2d at 580). The Court simply cannot fit the facts

before it into the ordinary and popular sense of the word "development." For example, Black's

Law Dictionary defines "development" as "[a] substantial human-created change to improved or

unimproved real estate, including the construction of buildings or other structures" or "an

activity, action, or alteration that changes underdeveloped property into developed property."

The context of the Agreement also supports the Court's conclusion, as the exclusivity clause

presumably seeks to prohibit the same activity for which the parties contracted. The Agreement

focuses on locating and obtaining an adequate Transfer Station Property and acquiring the

necessary permits to build and operate a transfer station. It seems to the Court, then, that this

was the parties' intended meaning for the term "development."

For these reasons, the Court finds that RST is entitled to summary judgment on Plaintiffs'

breach of contract claim on the theory of breach of the exclusivity clause.

4.     Failure to Develop a Transfer Station

Plaintiffs' Amended Complaint alleges that Defendants breached the Agreement by

"failing to follow through on their commitment to pursue development of a waste transfer station

with Plaintiffs" (Doc. No. 11 ¶ 35), and Plaintiffs' Response to Defendants' Motion further states

that RST failed to continue pursuit of the development of a transfer station while not terminating

the Agreement "in order to prevent Harrington and Withco from pursuing the development of a waste transfer station themselves." (Doc. No. 45 at 7.) Plaintiffs have not, however, suggested any specific terms of the Agreement which RST might have violated by such actions (nor is the Court aware of any), and have therefore failed to create a genuine dispute as to a breach of contract claim on this theory.

On the contrary, the Agreement states that potential property for the transfer station must be acceptable to RST and provides contingencies for the situation when Plaintiffs obtain an option on a property that is ultimately unacceptable. It also provides for termination of the Agreement by either party with no condition that a transfer station must be completed. The Agreement clearly contemplates that some properties obtained by Plaintiffs will not result in the development of a transfer station, as was the case with the Altivia Property, and that the Agreement may be terminated prior to such development. Plaintiffs cannot argue, therefore, that RST breached the Agreement by failing to continue pursuit of or construct a transfer station on the Altivia Property specifically. Finally, and perhaps most notably, Mr. Harrington admitted in his deposition that Plaintiffs have not presented any potential properties to RST since the Altivia Property in 2004; it seems that this would have made it difficult for RST to have pursued development of a transfer station with Plaintiffs in the intervening time. The Court finds that RST is entitled to summary judgment on Plaintiffs' breach of contract claim relating to RST's failure to pursue development of a transfer station with Plaintiffs.

5.      Failure to Advise About the Altivia Option

Although Plaintiffs assert in their Response that Defendants breached the Agreement by failing to advise Withco in writing whether the Altivia Option was acceptable and the reasons

14

why it was not acceptable (Doc. No. 45 at 6), Plaintiffs do not elaborate beyond this single statement. Section 4.01 of the Agreement states in relevant part:

> If and when Withco intends to secure an option to purchase real property to be used as Transfer Station Property, Withco shall deliver to [RST] written notice of its intention . . . . Within two (2) business days of receipt of the notice and option, [RST] shall advise Withco in writing whether the option is acceptable to [RST] and, if not acceptable, the reasons why the option is not acceptable. If the Option is acceptable to [RST] and Withco makes Option payments to the landowner as required under Section 3.02(a), and if such Option payments are non-refundable and thereafter [RST] elects not to purchase the property, [RST] shall, within thirty (30) days of its election not to purchase the property, reimburse Withco the amount of any non-refundable Option payments made to the landowner by Withco.

(Doc. No. 1-1 at 5-6.) As Defendants point out, the requirement for RST's written response pertains to the steps prior to Withco obtaining an option. According to Mr. Harrington himself, RST approved the Altivia Property prior to Withco obtaining the Altivia Option. (Doc. No. 44 ¶ 7.) Plaintiffs do not dispute that RST did not find the Altivia Property unacceptable until after Withco purchased the Option. There is no requirement in Section 4.01 or elsewhere in the Agreement that RST must give Withco written notice of its reasons not to purchase a property after the option is obtained. In fact, Section 4.01 expressly provides for the situation when RST decides not to purchase an optioned property, and only requires that RST reimburse Witcho for any payments made to secure the option. Plaintiffs do not dispute that they were reimbursed in full for their costs in securing the Altivia Option. For these reasons, RST is entitled to summary judgment on this theory of Plaintiffs' breach of contract claim.

6.    Repudiation

Finally, Plaintiffs argue in their Response that RST repudiated the Agreement by directing Withco not to obtain the final permit for developing a transfer station on the Altivia

15

Property.  (Doc. No. 45 at 8-9.)  Repudiation occurs "when a party commits a voluntary act which renders the party unable or apparently unable to perform the contract," or "when the words a conduct of the contracting party . . . amount to a total and unqualified refusal to perform the contract."  *UT Med. Grp., Inc. v. Vogt*, 235 S.W.3d 110, 120 (Tenn. 2007) (internal quotations omitted).  Plaintiffs do not explain how RST's instruction not to obtain the final permit constitutes repudiation.  As previously discussed, the Agreement explicitly provides for a situation in which RST chooses not to purchase a property for which Withco obtained an option.  Plaintiffs do not allege which duties RST were incapable of performing as a result of the instruction not to obtain the permit and do not allege that it amounted to a refusal to perform under the Agreement.  Upon its own review, the Court finds no terms in the Agreement that would support such a claim.  Plaintiffs have failed to create a genuine dispute as to whether RST repudiated the Agreement.

For the foregoing reasons, the Court hereby **GRANTS** Defendants' Motion as to Plaintiffs' breach of contract claim against RST.

B.    *Unjust Enrichment and Quantum Meruit Against RSI*

Plaintiffs' Amended Complaint also alleges that RSI, RST's parent company, was unjustly enriched by Plaintiffs' services for which Plaintiffs were not compensated, and brings causes of action for unjust enrichment and quantum meruit.  (Doc. No. 11 ¶¶ 38-39.)[4]  Plaintiffs provide the sworn declaration of Mr. Harrington, in which he attests to the services he provided and the value of those services.  (Doc. No. 44.)

---

[4] Plaintiffs also claimed unjust enrichment against RST; the Court has previously dismissed that claim (Doc. No. 52) and will therefore not address arguments related to RST's liability.

The causes of action of unjust enrichment and quantum meruit are essentially the same, and courts use them interchangeably relating to quasi-contractual actions. *Metro. Gov't of Nashville & Davidson Cnty. v. Cigna Healthcare of Tenn., Inc.*, 195 S.W.3d 28, 32 (Tenn. Ct. App. 2005) (citing *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 154 (Tenn. 1966)). To prevail on a quasi-contractual claim, a plaintiff must establish three elements: "(1) [a] benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) (internal quotations omitted). The most important element of an unjust enrichment claim is that retention of the benefit by the defendant must be unjust. *Ferguson v. Nationwide Prop. & Cas. Ins. Co.*, 218 S.W.3d 42, 51 (Tenn. Ct. App. 2006) (citing *Paschall's*, 407 S.W.3d at 154).

It is "well established" in Tennessee law that, under ordinary circumstances, a contract to which a parent or subsidiary corporation is a party does not bind the other. *Tenn. Valley Auth. v. Exxon Nuclear Co., Inc.*, 753 F.2d 493, 497 (Tenn. Ct. App. 1985). RSI was not a party to the Agreement; therefore, to the Court's knowledge, no contract existed between Plaintiffs and RSI relating to the development of waste transfer stations. *See id.* (holding that a parent corporation was not bound by a contract to which its subsidiary was a party when it was clear on the face of the contract that the parent company did not intend to be a party). Defendants argue, however, that the Agreement with RST covered the activity for which Mr. Harrington seeks compensation and the agreed upon payment for it, and therefore Plaintiffs should be barred from recovering additional compensation through their unjust enrichment claim. (Doc. No. 49 at 11-12.)

17

The Court agrees with Defendants. Although Mr. Harrington states in his declaration that he began providing services in early 2002 (Doc. No. 44 at 4), before the Agreement was finalized, he also specifies that those services were in anticipation of and in connection with the Agreement. For example, Mr. Harrington's declaration states that he began searching for property in March of 2002 immediately after declaring that "selecting the most favorable property located within the geographical quadrant of Metro that [RST] specified in the Agreement was the key element to the success of the project." (*Id.* at 5.) In discussing a property that he presented to RST prior to signing the Agreement, Mr. Harrington states that language was added to the unfinished Agreement to address a novel situation that the property presented. (*Id.* at 6.) Finally, and perhaps most importantly, Mr. Harrington's declaration concludes that his services consisted of "many, many hours of research, telephone calls, meetings, travel, document preparation and review and presentation preparation went into providing [RSI] and [RST] with the consultative services necessary to perform my obligations under the Agreement." (*Id.* at 12.) Mr. Harrington's declaration makes it clear to the Court that any services he provided were in contemplation of a contract between the parties, namely the Agreement, although the terms had not yet been reduced to writing. Mr. Harrington provided the services while he was negotiating the Agreement, and he could have therefore negotiated different terms for compensation. That he failed to do so does not make it unjust for him to go without additional compensation now.

Defendants have also argued that Plaintiffs have not produced evidence that they actually provided valuable goods or services to RSI, and that the only benefit RSI could have received is by virtue of owning RST's stock. (Doc. No. 39 at 19.) The Court finds scant law addressing

whether the appreciation of stock is sufficient to confer a benefit on a stockholder for the purposes of an unjust enrichment claim. Generally, a benefit received by a defendant does not have to be direct to establish an unjust enrichment claim; rather, a defendant who receives any benefit from a plaintiff may be held liable for unjust enrichment if the defendant's retention of the benefit would be unjust. *Freeman Indus., LLC*, 172 S.W.3d at 525. The question is irrelevant, however, as Plaintiffs have offered no evidence to create a genuine dispute of material fact that RST's stock appreciated during the time in question, much less that any appreciation was due to their services. Thus, Plaintiffs would be required to establish a genuine dispute as to whether they provided a benefit directly to RSI in order for their unjust enrichment claim to survive summary judgment. The Court finds that Plaintiffs have failed to meet this burden. The only evidence that Plaintiffs have produced on this matter is Mr. Harrington's declaration, and beyond a conclusory statement that RSI received and benefited from Mr. Harrington's work, the declaration does not delineate any specific instances of services provided directly to RSI. Because there are no documented instances of Plaintiffs' services, there is insubstantial evidence to create a genuine dispute as to whether a benefit was conferred on RSI, and Plaintiffs' unjust enrichment claim fails.

For the foregoing reasons, the Court finds that Plaintiffs have failed to establish a genuine dispute of material fact as to their unjust enrichment and quantum meruit claims against RSI. The Court therefore **GRANTS** summary judgment in favor of RSI.

IV.     CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs have not produced sufficient evidence to create a genuine dispute of material fact regarding either their breach of contract or

unjust enrichment claims.  Accordingly, Defendants' Motion for Summary Judgment is

**GRANTED**.

It is so ORDERED.

Entered this____22nd_____day of September, 2011.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT